THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CVB, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CORSICANA MATTRESS COMPANY, ELITE COMFORT SOLUTIONS, INC., FUTURE FOAM, INC., FXI HOLDINGS, INC., LEGGETT & PLATT, INC., SERTA SIMMONS BEDDING, LLC, TEMPUR SEALY INTERNATIONAL, INC., BROOKLYN BEDDING, INC., and INTERNATIONAL SLEEP PRODUCTS ASSOCIATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [ECF NO. 103 AND 110] DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 1:20-cv-00144-DBB<br><br>District Judge David Barlow |

Before the court are Corsicana Mattress Company ("Corsicana"), Elite Comfort Solutions, Inc., Future Foam, Inc., FXI Holdings, Inc., Leggett & Platt, Inc., Serta Simmons Bedding, LLC ("Serta"), Tempur Sealy International, Inc. ("Sealy"), Brooklyn Bedding, Inc. (the "Seller Defendants")[1] and International Sleep Products Association ("ISPA")[2] (collectively "Defendants") motions to dismiss Plaintiff CVB, Inc.'s ("CVB") Second Amended Complaint.[3] Having considered the briefing and relevant law, the court concludes the Motions may be

---

[1] Defendants' Motion to Dismiss the Second Amended Complaint for Failure to State a Claim ("Seller D.s' MTD"), ECF No. 103, filed May 16, 2024.
[2] Defendant International Sleep Products Association's Motion to Dismiss the Second Amended Complaint for Failure to State a Claim ("ISPA MTD"), ECF No. 110, filed June 11, 2024.
[3] Second Amended Complaint and Demand for Jury Trial ("SAC"), ECF No. 100, filed May 2, 2024.

resolved without oral argument.[4] For the reasons discussed below, Defendants' motions are granted.

## BACKGROUND

CVB is a mattress producer and distributor headquartered in Utah.[5] CVB typically sells mattresses in a box, both online and to brick and mortar retailers.[6] Seller Defendants are competitors in the domestic mattress market, including sellers, distributors, and manufacturers.[7] These defendants collectively have a large share of the Flat-Pack mattress market and the mattress market generally.[8] ISPA is a trade association that works to elevate the image and advance the interests of the sleep products industry.[9] Seller Defendants are ISPA members, while CVB is not.[10]

CVB's claims largely center on two antidumping petitions filed by Seller Defendants and supported by ISPA before the Department of Commerce ("Commerce") and the U.S. International Trade Commission ("ITC") (collectively "Agencies").[11] In September 2018, Seller Defendants and other domestic mattress companies filed a petition ("First Petition") with the Agencies alleging that mattresses imported from China were being sold for less than fair market

---

[4] *See* DUCivR 7-1(g).
[5] SAC ¶ 12.
[6] SAC ¶ 12.
[7] SAC ¶ 30 ("Corsicana supplies Mattresses to consumers in the United States"); ¶ 33 ("ECS sells finished Mattresses"); ¶ 38 ("Future Foam is a major supplier of polyurethane foam that is used in Mattresses"); ¶ 41 ("FXI is a major supplier of polyurethane foam that is used in Mattresses"); ¶ 46 ("Leggett & Platt is a major supplier of Mattress components"); ¶ 49 ("Serta Simmons claims to be the largest manufacturer, marketer, and supplier of Mattresses in North America"); ¶ 55 ("Tempur Sealy is a global bedding company that develops, manufacturers, and markets bedding products, including Mattresses"); ¶ 60 ("Brooklyn Bedding manufacturers and sells Mattresses").
[8] SAC ¶ 6.
[9] SAC ¶¶ 63, 299.
[10] Seller D.s' MTD 1; SAC ¶ 361.
[11] SAC 6.

value ("dumped"), harming the domestic mattress industry.[12] CVB claims that in response to this petition, it was forced to stop purchasing mattresses from China.[13] ISPA expressed support for the anti-dumping petition and hosted a conference panel discussing the issue.[14] Several Seller Defendants also publicly expressed support for the petition.[15] On December 9, 2019, the ITC issued its final report on the petition, finding the domestic mattress industry had been materially injured by the dumping of mattresses from China.[16]

On March 31, 2020, Corsicana, Brooklyn Bedding, Leggett & Platt, Elite Comfort Solutions, and other organizations associated with domestic mattress production filed another petition ("Second Petition") with the Agencies, claiming the domestic mattress manufacturing industry was being harmed by imports of mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, Turkey, Vietnam, and China.[17] Seller Defendants and ISPA issued statements expressing their support for the Second Petition.[18] The ITC found in its preliminary determination that the petitioners had met the Reasonable Indication Standard for the alleged dumping.[19] In May 2021, the ITC found the US mattress industry had been materially injured by imports of mattresses being sold at less than fair market value.[20]

---

[12] SAC ¶ 175.
[13] SAC ¶ 189.
[14] SAC ¶¶ 301, 302.
[15] SAC ¶¶ 305, 206, 307.
[16] SAC ¶¶ 220, 221; *see also* Commerce First Petition Final Affirmative Determination, ECF No. 36-4, filed Dec. 11, 2020.
[17] SAC ¶¶ 242, 244.
[18] SAC ¶¶ 307, 308.
[19] SAC ¶ 289.
[20] U.S. International Trade Commission Publication 5191 on Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam, ECF No. 72-3, filed Dec. 29, 2021 (finding that the United States mattress industry is materially injured by reason of imports from outside the U.S.).

CVB filed its original Complaint against the Seller Defendants on October 28, 2020.[21] The complaint brought eight claims for relief, including five antitrust claims,[22] one Lanham Act claim,[23] intentional interference with prospective economic advantage,[24] and defamation.[25] Seller Defendants filed a Motion to Dismiss for failure to state a claim,[26] which the court granted without prejudice on September 15, 2021.[27]

CVB filed its first Amended Complaint on December 15, 2021, bringing the same eight causes of action as in their original complaint.[28] Seller Defendants again filed a motion to dismiss for failure to state a claim.[29] On May 23, 2022, the court granted Seller Defendants' motion.[30] In its decision, the court found that Seller Defendants are entitled to *Noerr-Pennington* immunity for the petitioning activity,[31] and claims one through six that were based on the petitioning activity were dismissed with prejudice.[32] CVB's Sherman Act and Lanham Act claims based on actions outside the petitioning activity, as well as their intentional interference with prospective business relations and defamation claims, were dismissed without prejudice.[33]

---

[21] Complaint, ECF No. 2, filed Oct. 28, 2020.
[22] *Id.* The five antitrust claims include Sham Petitioning (pg. 56); Monopolization (pg. 60); Monopoly Leveraging (pg. 62); Conspiracy to Monopolize (pg. 63); and Violation of the Utah Antitrust Act (pg. 65).
[23] *Id.* at 64.
[24] *Id.* at 65.
[25] *Id.* at 67.
[26] Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 35, filed Dec. 11, 2020.
[27] Order Granting Motion to Dismiss, ECF No. 63, filed Sep. 15, 2021.
[28] Amended Complaint ("FAC"), ECF No. 69, filed Dec. 15, 2021.
[29] Defendants' Motion to Dismiss the First Amended Complaint for Failure to State a Claim, ECF No. 72, filed Dec. 29, 2021.
[30] Memorandum Decision and Order Granting [72] Defendants' Motion to Dismiss ("Order Granting Second MTD"), ECF No. 79, filed May 23, 2022.
[31] *Id.*
[32] *Id.* at 57.
[33] *Id.*

CVB appealed the court's decision to the United States Court of Appeals for the Tenth Circuit,[34] which dismissed the appeal for lack of jurisdiction.[35] CVB then brought a motion for leave to file their second amended complaint,[36] which Seller Defendants opposed.[37] The court granted CVB's motion to file a second amended complaint on April 3, 2024.[38]

The Second Amended Complaint brings the same eight causes of action as the two previous complaints.[39] The allegations are overwhelmingly the same except for a small number of substantive additions and a larger number of deletions. Also, CVB added ISPA as a defendant, claiming ISPA was a co-conspirator with Seller Defendants.[40] Seller Defendants again brought a Motion to Dismiss for failure to state a claim on May 16, 2024.[41] ISPA filed its own Motion to Dismiss on June 11, 2024, incorporating Seller Defendants' arguments.[42] CVB filed its opposition to both motions on July 9, 2024.[43] Defendants replied on July 30, 2024.[44]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its

---

[34] Notice of Appeal, ECF No. 80, filed June 21, 2022.
[35] Order of Untied States Court of Appeal for the Tenth Circuit, ECF No. 92, filed July 19, 2023.
[36] Plaintiff CVB Inc.'s Motion for Leave to File a Second Amended Complaint, ECF No. 94, filed Nov. 3, 2023.
[37] Mem. in Opp. to Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 97, filed Nov. 17, 2023.
[38] Memorandum Decision and Order Granting [94] Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 99, filed April 3, 2024.
[39] SAC 66–75.
[40] SAC ¶¶ 300, 301, 308, 309.
[41] Seller D.s' MTD.
[42] ISPA MTD 1.
[43] Plaintiff CVB Inc.'s Opposition to Corsicana Defendants' Motion to Dismiss Second Amended Complaint ("CVB Opp. to Seller D.s' MTD"), ECF No. 114, filed July 9, 2024; Plaintiff CVB Inc.'s Opposition to Defendant ISPA's Motion to Dismiss the Second Amended Complaint ("CVB Opp. to ISPA MTD"), ECF No. 115, filed July 9, 2024.
[44] Reply Memorandum in Support of Defendants' Motion to Dismiss the Second Amended Complaint for Failure to State a Claim ("Seller D.s' Reply"), ECF No. 117, filed July 30, 2024; Defendant International Sleep Product Association's Reply in Support of its Motion to Dismiss the Second Amended Complaint for Failure to State a Clam ("ISPA Reply"), ECF No. 118, filed July 30, 2024.

face."[45] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[46]

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[47] "A conclusory allegation is one in which an inference is asserted without stating underlying facts or including any factual enhancement."[48] The court "must disregard conclusory allegations and instead look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim."[49] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[50]

## DISCUSSION

In its Second Amended Complaint, CVB asserts the same eight causes of action as in its previous complaints, this time adding ISPA as a defendant. The court first addresses CVB's antitrust claims, then turns to the Lanham Act, intentional interference with prospective business relations, and defamation claims. The claims are addressed only insofar as they are not based on the Seller Defendants' petitioning activity, as those claims have already been dismissed with prejudice.[51]

---

[45] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).
[46] *McNellis v. Douglas Cnty. Sch. Dist.*, No. 23-1306, 2024 WL 4128804, at *4 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonald*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[48] *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)) (cleaned up).
[49] *Id.* (internal quotation marks omitted).
[50] *Iqbal*, 556 U.S. at 678.
[51] Order Granting Second MTD 57.

## I.       Antitrust Claims

Before turning to the substance of CVB's antitrust claims, the court addresses CVB's overarching failure to specifically allege each Defendant's actions. CVB's Second Amended Complaint replicates the collective pleading deficiencies of its previous complaints, largely failing, with a few exceptions, to identify which of the nine Defendants have engaged in which behavior.[52] CVB argues its Second Amended Complaint is sufficient because "Defendants' conspiracy is the very crux of this case."[53] CVB also claims that use of the term "Defendants" applies to all Defendants throughout its pleadings, therefore, they have alleged which Defendants have taken which actions.[54]

"When a defendant asserts complex claims against multiple defendants, it is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations."[55] Plaintiffs must allege sufficient facts for the court to "tell which defendant is alleged to have done what" and "what the misconduct was."[56] "Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust [cases]."[57] To proceed with an antitrust claim, a complaint "must allege more than mere

---

[52] Order Granting Second MTD 32–34.
[53] CVB Opp. to Seller D.s' MTD 4.
[54] *Id.*
[55] *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, <u>691 F. App'x 515, 519</u> (10th Cir. 2017) (quoting *Kansas Penn Gaming, LLC v. Collins*, <u>656 F.3d 1210, 1215</u> (10th Cir. 2011)) (internal quotation marks omitted).
[56] *Id.*, quoting *Ashcroft v. Iqbal*, <u>556 U.S. 662, 679</u> (2009) (italics removed).
[57] *In re Processed Egg Prod. Antitrust Litig.*, <u>821 F. Supp. 2d 709, 720</u> (E.D. Pa. 2011); *see also Bell Atl. Corp. v. Twombly*, <u>550 U.S. 544, 565</u> (2007) (noting that defendants in antitrust cases would have "little idea" how to respond to "plaintiffs' conclusory allegations" when no specific time, place, or person involved in the alleged conspiracies is stated); *Buck v. Am. Quarter Horse Ass'n*, <u>602 F. App'x 709, 713</u> (10th Cir. 2015) (Upholding

repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy."[58]

CVB has failed to specifically allege which Defendants engaged in most of the allegedly anticompetitive behavior. Indeed, CVB has not addressed the instances of improper collective pleading pointed out by the court in its previous order.[59] Instead, CVB continues to make collective references to Defendants[60] and impute the action of one or two Defendants to all Defendants,[61] thereby failing to correct its deficient pleading.

CVB relies on *Lewis v. Tripp*[62] to argue that "complaints are only subject to dismissal based on collective pleading where a plaintiff alleges no facts whatsoever in support of his

---

[58] dismissal of antitrust claims where amended complaint relied only on "bare, conclusory allegations" and failed to address district court's previous order granting motion to dismiss); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4642285, at *7 (E.D. Pa. 2017) (allegations that entities collectively maintained monopoly power were insufficient to survive motion to dismiss); *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1077 (N.D. Cal. 2014) (dismissing monopolization claims because plaintiff did not distinguish between allegedly conspiring companies).

[58] *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. CV 15-6480, 2019 WL 1514215, at *3 (E.D. Pa. 2019) (quoting *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d at 720)) (cleaned up).

[59] Order Granting Second MTD 32–33.

[60] SAC ¶ 227 ("Defendants' products periodically failed to meet certain flammability tests"); SAC ¶ 275 ("Defendants stated that the U.S. mattress industry 'has the geographic reach and capacity' to supply mattresses"); SAC ¶ 287 ("Defendants' mergers and acquisitions during this time period led to 1,278 job losses (nearly identical to the Second Fraudulent Petitioners' claimed injury by importers) but created 1,215 new jobs, for a total net loss of sixty-three jobs"); SAC ¶ 293 ("Defendants also misled the ITC into believing that Defendants were all primarily manufacturers of a finished good, as opposed to manufacturers of components used to assemble finished products"); SAC ¶ 318 ("Defendants have repeatedly offered brick and mortar retailers as much as $25,000 for store remodels on the condition that the retailer will stop selling CVB products); SAC ¶ 326 ("Defendants regularly misrepresent their products as being 'Made in America").

[61] SAC ¶¶ 197–201 (CVB alleges that Defendants also provided fraudulent information regarding the loss of jobs and closure of factories but relies on supporting testimony from only two Defendants, Tempur Sealy and Corsicana); SAC ¶¶ 203–207 (CVB alleges that Defendants also made fraudulent representations about the impact on e-commerce listings but relies on supporting testimony from only two Defendants, Serta and Tuft & Needle); SAC ¶ 288 (CVB alleges that Defendants fraudulently presented testimony but cites to the testimony of only one Defendant, Leggett & Platt); SAC ¶¶ 318–324 (CVB alleges that Defendants have repeatedly offered brick and mortar retailers money not to sell competing products but supports that statement with examples pertaining to only two Defendants, Sealy and Serta).

[62] 604 F.3d 1221, 1230 (10th Cir. 2010).

claims against a defendant."[63] *Lewis* does not stand for this proposition. In that case, the Tenth Circuit held that the Plaintiff had not alleged sufficient facts to avoid summary judgment on his claim against an individual defendant. *Lewis* did not involve or address collective pleading. CVB also cites *Kansas Penn Gaming, LLC v. Collins* to argue that using the term "Defendants" refers to all Defendants, so it has adequately alleged what each individual Defendant has done.[64] Not so. In *Kansas Penn Gaming*, the Tenth Circuit elucidated the then-new plausibility pleading standard set forth in the *Iqbal* and *Twombly* cases. The court ultimately found the plaintiff had failed to state a claim against the named defendants.[65] Accordingly, the court simply considers the well-pleaded fact allegations in CVB's Second Amended Complaint under the now familiar plausibility standard, liberally construing the pleadings in favor of CVB.

### a. Section 1 Violation

In its first claim for relief, CVB alleges that Defendants violated Section 1 of the Sherman Act by fixing prices, conspiring to mislead consumers and retailers, thwarting competition, and conspiring to harm CVB.[66] Defendants argue that CVB's Section 1 claim fails to plausibly allege any agreement that unreasonably restrained trade.[67]

"Section 1 of the Sherman Act prohibits unreasonable restraints on trade."[68] "To state a claim for a Sherman Act § 1 violation, 'the plaintiff must allege facts which show the defendant entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant

---

[63] CVB Opp. to Seller D.s' MTD 4.
[64] *Id.*, quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).
[65] *Id.* at 1222.
[66] SAC ¶ 344; CVB Opp. to Seller D.s' MTD 6–7.
[67] Seller D.s' MTD 8.
[68] *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1178 (10th Cir. 2023).

market.'"[69] "The essence of a claim of violation of Section 1 of the Sherman Act is the

agreement itself"[70] which "must be designed unreasonably to restrain trade."[71]

CVB has amended its Section 1 allegation to state that Defendants violated Section 1 by

"using ISPA to thwart and undermine CVB's attempts to compete in the marketplace."[72] But

"[n]ot every action by a trade association is concerted action by the association's members.

Indeed, even though a trade association by its nature involves collective action by competitors, a

trade association is not a walking conspiracy."[73] Antitrust plaintiffs "must present evidence

tending to show that association members, in their individual capacities, consciously committed

themselves to a common scheme designed to achieve an unlawful objective."[74] "Mere exchanges

of information, even regarding price, are not necessarily illegal, in the absence of additional

evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the

information exchange."[75] Additionally, "[a] complaint is insufficient if the alleged behavior was

as likely to have been the result of legal, unilateral action as the product of illicit collusion."[76]

Plaintiffs have failed to plausibly allege that Defendants, with or without the addition of

ISPA, agreed to restrain trade. CVB continues to argue that Defendants agreed "to pursue sham

petitions and to provide false and misleading information to Commerce and ITC,"[77] but those

---

[69] *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 756 (10th Cir. 1999) (quoting *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992)).
[70] *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 (10th Cir. 2006).
[71] *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1174 (10th Cir. 2019) (quoting *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1257 (10th Cir. 2006)).
[72] SAC ¶ 344.
[73] *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1178 (10th Cir. 2019) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 40 (2d Cir. 2018)).
[74] *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999).
[75] *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) (citations omitted).
[76] *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)) (cleaned up).
[77] SAC ¶ 347.

petitioning activity claims previously were dismissed with prejudice.[78] CVB next alleges that ISPA is controlled by Defendants and that "Defendants conspired with ISPA to restrain competition from CVB" but offers no plausible facts from which the court could infer that an agreement to restrain trade was made.[79] On this record, issuing a press release or hosting a conference panel does not plausibly allege a conscious commitment to illegally restrain trade.[80] CVB has not alleged that ISPA's actions decreased competition in the mattress market or had an anticompetitive effect.

CVB relies on *Full Draw Products v. Easton Sports, Inc.* to argue that ISPA and Seller Defendants have both violated the Sherman Act.[81] There, plaintiffs alleged the AMMO trade association and its members had decided to boycott plaintiffs' trade show to eliminate it as a competitor.[82] The Tenth Circuit found the complaint adequately alleged a group boycott in violation of Section 1 of the Sherman Act because the boycott destroyed plaintiff's trade show, stating that "the instant case is not one in which it is alleged that a competitor fell prey to competition; it is one in which it is alleged that competition fell prey to a competitor. The competitor was AMMO, which through an alleged boycott of the trade association and various of its members reduced the number of competitors in the market from two to one, thereby decreasing competition and harming consumers."[83]

---

[78] Order Granting Second MTD 57.
[79] SAC ¶ 300.
[80] *See Llacua v. W. Range Ass'n*,, 930 F.3d 1161, 1178 (10th Cir. 2019) (stating there was no allegation of fact showing the Association defendants controlled member decision-making processes to further a collective scheme).
[81] CVB Opp. to ISPA MTD 14–15.
[82] *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 748 (10th Cir. 1999).
[83] *Id.* at 754.

Unlike in *Full Draw*, CVB has not alleged that ISPA "actively invaded another market through anticompetitive behavior and substantially changed what that market looked like."[84] CVB's factual allegations about ISPA's conduct are distinguishable from the defendants in *Full Draw*; ISPA is not alleged to have been part of a boycott, ISPA's alleged statements did not name CVB, and CVB has not alleged that ISPA retaliated against businesses that continued to work with CVB.[85] The alleged anticompetitive behavior undertaken by Seller Defendants and imputed to ISPA as their co-conspirator must still be sufficient to support an antitrust claim, and the addition of ISPA as a defendant does not make CVB's antitrust allegations sufficiently plausible to withstand Defendants' motions to dismiss.

The three remaining forms of anticompetitive conduct CVB relies on to support its antitrust claims similarly fail to allege anticompetitive behavior. First, CVB claims Defendants engaged in price fixing by increasing mattress prices.[86] It states that Corsicana raised prices in 2021 and Defendants, without specifying which other Defendants, increased prices soon after.[87] This bare allegation fails to establish that any Seller Defendants conspired to artificially raise prices, as the alleged price increase is just as likely to be the result of normal competition or other market forces as the result of an illegal conspiracy.[88]

Furthermore, as Seller Defendants' competitor, CVB does not have standing to challenge any alleged conspiracy to raise the market price in mattresses.[89] "The threshold inquiry in

---

[84] *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1197–98 (10th Cir. 2009).
[85] *Full Draw*, 182 F.3d at 748 (listing defendants' anticompetitive behavior).
[86] SAC ¶ 321.
[87] SAC ¶ 321.
[88] *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 195 (3d Cir. 2017) (31 parallel price increases did not demonstrate conspiracy to raise prices).
[89] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488–489 (1977)).

analyzing whether a plaintiff may pursue an antitrust claim is that of antitrust injury. An antitrust injury is an injury of the type the antitrust laws were designed to prevent and that flow from that which makes defendants' acts unlawful."[90] "Thus, [t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior."[91] Moreover, a "producer's loss is no concern of the antitrust laws, which protect consumers from suppliers rather than suppliers from each other."[92] Plaintiffs carry the burden to demonstrate antitrust injury.[93]

      CVB cannot recover for a conspiracy that raises market price, as these "restrictions, though harmful to competition, actually *benefit* competitors by making supracompetitive pricing more attractive."[94] If one or more of the Seller Defendants did raise prices, this would give CVB the opportunity to undercut their prices and possibly increase its market share.[95] Raising prices would not necessarily reduce competition as required for an antitrust injury; it is just as likely to have increased competition. CVB's conclusory statement that Defendants' conduct injured its business does not adequately allege an antitrust injury sufficient to establish antitrust standing.[96]

---

[90] *Abraham v. Intermountain Health Care Inc*., 461 F.3d 1249, 1267 (10th Cir. 2006) (quoting *B-S Steel of Kansas, Inc. v. Texas Indus., Inc*., 439 F.3d 653, 666 (10th Cir. 2006)) (also quoting *Todorov v. DCH Healthcare Auth*., 921 F.2d 1438, 1449 (11th Cir. 1991)).

[91] *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co*., 407 F.3d 1091, 1124 (10th Cir. 2005) (quoting *Atl. Richfield Co. v. USA Petroleum Co*., 495 U.S. 328, 344 (1990)) (italics in original).

[92] *SCFC ILC, Inc. v. Visa USA, Inc*., 36 F.3d 958, 972 (10th Cir. 1994) (quoting *Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992)).

[93] *Abraham v. Intermountain Health Care Inc*., 461 F.3d 1249, 1267 (10th Cir. 2006) (citing *Hairston v. Pac. 10 Conf*., 101 F.3d 1315, 1321 (9th Cir. 1996)).

[94] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 583 (1986) (italics in original).

[95] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig*., 44 F.4th 959, 986 (10th Cir. 2022) ("If the monopolist pushes prices above the competitive level, the foreclosed competitor might develop alternative channels of distribution. . . effectively pushing prices down to the competitive level.") (internal quotations omitted).

[96] SAC ¶ 354; CVB Opp. to Seller D.s' MTD 7.

CVB relies on *IQ Dental Supply, Inc. v. Henry Schein, Inc.* for the proposition that unactionable price-fixing claims are still relevant to whether an anticompetitive market has been created.[97] However, CVB ignores the Second Circuit's statement that the alleged price-fixing conspiracy in that case was "not part of this appeal."[98] Any price-fixing claims had been dismissed with prejudice by the district court because "competitors cannot claim injury from supracompetitive prices," a finding not challenged on appeal.[99] Therefore, CVB has not adequately alleged it has antitrust standing based on the alleged price increases.[100]

Next, CVB claims Defendants carried out a conspiracy to mislead consumers.[101] They argue that press releases and other advertising issued by Defendants concerning their petitions were meant to mislead consumers and suppliers.[102] CVB fails to state which Seller Defendants made these statements, stating only that "Defendants" issued press releases.[103] Even ignoring this pleading deficiency, CVB has failed to allege an antitrust conspiracy through any public statements. CVB does not allege sufficient facts that any press release or "Made in the USA" advertisement was plausibly motivated by an illicit conspiracy to restrain trade rather than part of the normal course of Defendants' businesses.[104] CVB alleges that ISPA's press releases addressing the petitions originated with Defendants and are an example of an anticompetitive

---

[97] CVB Opp. to Seller D.s' MTD 11–12.
[98] *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 61 (2d Cir. 2019).
[99] *Id.* at n.2.
[100] *See JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 855 (10th Cir. 2014) (Holmes, J., concurring) (affirming summary judgment in defendants' favor because plaintiffs lacked antitrust standing); *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1125 (10th Cir. 2005) (affirming dismissal of antitrust claims because plaintiff had not adequately alleged an antitrust injury)*; New Mexico Oncology v. Presbyterian Healthcare Servs.*, 169 F. Supp. 3d 1204, 1212 (D.N.M. 2016) (granting defendant's partial motion to dismiss because "Plaintiff has alleged only ordinary business losses and not an antitrust injury").
[101] SAC ¶ 344.
[102] SAC ¶ 22.
[103] SAC ¶¶ 294–296.
[104] SAC ¶¶ 301–305.

conspiracy to injure CVB.[105] However, as alleged, the press releases do not amount to an illegal conspiracy to restrain trade. ISPA's statements that imports of Chinese mattresses have harmed the U.S. mattress industry do not reveal a design to unreasonably retrain trade; the statements are as likely to have been the result of legal action as an illicit conspiracy.[106]

Finally, CVB claims Defendants paid retailers not to carry CVB products.[107] However, CVB only points to two Seller Defendants, Sealy and Serta, entering into separate agreements with separate retailers to receive flooring space or not sell certain competitor products.[108] No facts are alleged that connect those allegations to each other, much less to the other Defendants. Accordingly, these isolated allegations do not show there was a concerted action by all Defendants or even the two named Seller Defendants to restrain trade.[109]

In short, the facts alleged by CVB do not lead to a plausible inference that the Defendants entered into an illegal agreement to restrain trade in the mattress market.[110] Accordingly, CVB has failed to plausibly allege a violation of Section 1 of the Sherman Act.

### b. Monopolization

In its second claim for relief, CVB alleges that Defendants have unlawfully maintained a monopoly in the mattress market by interfering with competitors' businesses, raising prices and

---

[105] SAC ¶ 313–314.

[106] *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 665 (6th Cir. 2022) (court declines to infer that "press release was part of a larger design created by the Defendants to restrain trade" because antitrust agreements "should not demand this kind of intellectual leap").

[107] SAC ¶ 344.

[108] SAC ¶¶ 319–320.

[109] *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.").

[110] *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1256 (10th Cir. 2006) ("On the other hand, 'unilateral conduct, regardless of its anti-competitive effects, is not prohibited' by § 1 of the Sherman Act") (citation omitted).

costs, and making false statements.[111] It argues that Seller Defendants and ISPA conspired to maintain their monopoly, excluding CVB from competing in the mattress market.[112]

"[T]he elements of a monopoly claim under 15 U.S.C. § 2 include '(1) monopoly power in the relevant market; (2) willful acquisition or maintenance of this power through exclusionary conduct; and (3) harm to competition.'"[113] Antitrust laws "seek to advance competition, not advantage competitors."[114] "[T]he Sherman Act is not concerned with overly aggressive business practices, or even conduct that is otherwise illegal, so as long as it does not unfairly harm competition."[115] A plaintiff's Sherman Act claims are properly dismissed "if [its] complaint fails to sufficiently allege that Defendants' conduct had an anticompetitive effect in the relevant market."[116] The "bald, unsupported assertion that Defendants' conduct has restrained competition . . . does not sufficiently allege anticompetitive effect."[117]

Assuming the truth of CVB's claim that Defendants have a monopoly in the flat-pack mattress market, it has still failed to plausibly allege monopolization.[118] The exclusionary conduct CVB alleges Defendants engaged in, making statements and raising prices, may have harmed CVB. However, CVB has not sufficiently pled that this activity harmed competition.[119]

---

[111] SAC ¶ 352; CVB Opp. to Seller D.s' MTD 6.
[112] CVB Opp. to ISPA MTD 15.
[113] *Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 977 (10th Cir. 2018) (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014)).
[114] *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1217 (10th Cir. 2009).
[115] *JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 835 (10th Cir. 2014) (Holmes, J., concurring).
[116] *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 548 (10th Cir. 2015).
[117] *Id.* (cleaned up).
[118] Defendants argue that CVB has not plausibly alleged monopoly power because their individual market share cannot be aggregated. *See* Seller D.s' MTD 15. Because it does not alter the outcome of the monopolization claim, the court does not address this argument further.
[119] *See Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1197 (10th Cir. 2009) (plaintiffs failed to plausibly allege monopolization because alleged monopolists' ability to increase prices and reduce output did not harm market).

16

First, CVB has not alleged how Defendants raising prices harmed competition. CVB claims Defendants harmed the mattress market by charging supracompetitive prices and reducing the output of mattresses.[120] But businesses generally are free to choose what prices they charge for their own products.[121] As discussed above, the alleged increases in prices are as likely to enable competitors like CVB to undercut high prices and inject more products into the market as they are to harm competition. In short, CVB has failed to allege how the price increases harmed competition, as opposed to itself.

Second, CVB has not adequately alleged that any Defendant's statements unfairly harmed competition.[122] CVB has alleged that some Defendants took part in ultimately successful anti-dumping petitions and made public statements about those petitions. Any harm CVB allegedly may have suffered due to these statements is not harm to the market generally, but harm to a single competitor. Although CVB alleges it "would have made substantially more sales of Mattresses" if Defendants had not taken the allegedly anticompetitive actions, this does not amount to unfair harm to competition that harmed the mattress market generally.[123] Accordingly, CVB has failed to plausibly allege Defendants monopolized the mattress market.

### c. Monopoly Leveraging

In its next antitrust claim, CVB alleges that Defendants used their monopoly power in the flat-pack mattress market in an attempt to monopolize both the mattress in a box and broader

---

[120] SAC ¶ 325.
[121] *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (quoting *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009)) (stating that "as a general rule . . . purely unilateral conduct does not run afoul of section 2—businesses are free to choose whether or not to do business with others and free to assign what prices they hope to secure for their own products") (internal quotations removed).
[122] SAC ¶ 352.
[123] SAC ¶ 354.

mattress markets.[124] It alleges that Defendants acted together, using their collective market share in the flat-pack market to squeeze competitors out of the growing market for mattresses in a box and consolidate power in the general mattress market.[125] Seller Defendants argue they do not have monopoly power and have not engaged in exclusionary conduct.[126] ISPA argues it could not have leveraged monopoly power as it does not compete in the mattress market.[127]

Monopoly power "consists of 'the power to control prices or exclude competition' in the relevant product and geographic markets."[128] Monopoly leveraging is "an effort to use monopoly power in one market merely to achieve a competitive advantage in a second market."[129] Plaintiffs must show the monopolists have engaged in anticompetitive conduct and have a "dangerous probability of success in monopolizing a second market."[130] "However, a monopoly leveraging claim does not demonstrate a violation of Sherman Act section 2, absent proof of some other anticompetitive conduct in the allegedly monopolized market. Therefore, where a plaintiff has not established some other anticompetitive conduct, accusing the defendant of monopoly leveraging won't do anything to save the claim."[131]

Even if Defendants have a monopoly in the flat pack mattress market, CVB has not alleged any anticompetitive conduct sufficient to support a leveraging claim. CVB has not alleged, much less pled sufficient facts, that Defendants have a dangerous probability of success

---

[124] SAC ¶ 362.
[125] CVB Opp. to Seller D.s' MTD 5.
[126] Seller D.s' MTD 13.
[127] ISPA MTD 13.
[128] *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1220 (10th Cir. 2009) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571 (1966)).
[129] *Id.* at 1222.
[130] *Id.*, quoting *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004).
[131] *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1173 (10th Cir. 2021).

18

in monopolizing a second market. Although it alleges Defendants sell over seventy percent of the flat-pack mattress in the US,[132] CVB pleads no facts about how much of the mattress in a box market Defendants control or why it is likely they will successfully monopolize the boxed mattress market.

CVB also asserts that Defendants' anticompetitive conduct "can be observed in their decision to exclude CVB from ISPA."[133] However, "as a general matter, the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'"[134] "The primary concern of the antitrust laws is the corruption of the competitive process, not the success or failure of a particular firm."[135] CVB has not alleged that membership in ISPA is a prerequisite to competing in the mattress market or, more importantly, how its exclusion gives Defendants a dangerous probability of monopolizing the mattress in a box market. Like with its monopolization claim, CVB has not plausibly alleged that exclusion from ISPA is an impermissible anticompetitive act. Therefore, CVB has failed to plausibly allege Defendants violated the Sherman Act through monopoly leveraging.

### d. Conspiracy to Monopolize

In its final federal antitrust claim, CVB alleges that Defendants violated Sections 1 and 2 of the Sherman Act by conspiring to monopolize the mattress market.[136] CVB alleges

---

[132] SAC ¶ 7.

[133] SAC ¶ 361.

[134] *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)) (cleaned up).

[135] *Tal v. Hogan*, 453 F.3d 1244, 1258 (10th Cir. 2006) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)).

[136] SAC 76.

Defendants circulated the information from the anti-dumping petitions to mattress distributors, retailers, and customers, harming CVB and raising costs.[137] CVB points to statements made by Defendants as part of a public relations campaign and the agreements made by Sealy and Serta to support its claim that Defendants conspired to harm the U.S. mattress market.[138]

"[C]onspiracy to monopolize requires proof of (1) the existence of a combination or conspiracy to monopolize; (2) overt acts done in furtherance of the combination or conspiracy; (3) an effect upon an appreciable amount of interstate commerce; and (4) a specific intent to monopolize."[139] Antitrust law is concerned with the protection of competition or prevention of monopoly, "not the vindication of general notions of fair dealing."[140] "[W]rong, misleading, or debatable statements by one competitor about another competitor's products are indicative of competition on the merits and therefore do not constitute a restraint of trade for purposes of an antitrust violation."[141]

Although CVB makes repeated references to a "smear campaign" by Defendants, it identifies only three public statements that are not subject to *Noerr-Pennington* immunity, all made by ISPA.[142] ISPA issued statements supporting the antidumping petitions and celebrating

---

[137] *Id.*

[138] *Id.*, citing SAC ¶¶ 20, 151, 300, 301, 304, 307, 319, 320, 322, 324, 333. CVB also references their argument that Defendants have misrepresented their products as Made in America as part of its conspiracy against CVB. *See* CVB Opp. to Seller D.s' MTD 9, SAC ¶¶ 326, 327, 342. As discussed below, Seller Defendants' use of "Made in America" labels has not been plausibly alleged to be false. Furthermore, CVB has not plausibly alleged that Seller Defendants labeled their products this way as part of a coordinated conspiracy to harm competition, rather than independent action.

[139] *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1028 (10th Cir. 2002) (quoting *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992)) (cleaned up).

[140] *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1225 (10th Cir. 2009) (internal quotation marks omitted).

[141] *In re Merck Mumps Vaccine Antitrust Litig.*, 685 F. Supp. 3d 280, 303 (E.D. Pa. 2023) (citing *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 132 (3d Cir. 2005)) (internal quotation marks omitted).

[142] CVB Opp. to Seller D.s' MTD 10. CVB also argues that ISPA's statements are not protected by the First Amendment or *Noerr-Pennington* immunity. *See* CVB OPP to ISPA MTD 5–8. Because it does not alter the disposition on this issue, the court does not address this argument further.

their success—statements that not only do not mention CVB but also have not been plausibly alleged to have undermined competition.[143] CVB has not alleged how these statements had an effect upon an appreciable amount of interstate commerce.[144] The ISPA article on the antidumping investigations similarly does not reveal a conspiracy to monopolize.[145] CVB alleges the article informed members about the petitions and the possibility the Department of Commerce or ITC may contact them. No facts, much less sufficient facts, are pled that make a claim on the basis of this article plausible. Accordingly, CVB has failed to plausibly allege that Defendants conspired to monopolize.

CVB's argument that agreements made by Seller Defendants Sealy and Serta show an intent to monopolize similarly fails. As discussed above, these agreements have not been plausibly alleged to be anything more than independent business dealings by two of the Seller Defendants. There are no factual allegations connecting the two actions to each other, other Seller Defendants, or ISPA. Furthermore, CVB has not plausibly alleged that these actions had an effect upon an appreciable amount of interstate commerce, so these actions do not support its conspiracy claim.

Finally, CVB notes that it is not required to allege a specific meeting between the Defendants where they agreed to create monopoly, as such agreements are usually kept secret.[146]

---

[143] SAC ¶¶ 311–314.
[144] SAC ¶ 118 ("Defendants' business activities substantially have affected and are affecting interstate commerce in the United States and have caused and continue to cause antitrust injury throughout the United States.") CVB continues to argue the antidumping petitions had a substantial impact on the US mattress market, but this claim has already been dismissed with prejudice.
[145] SAC ¶ 309.
[146] CVB Opp. to Seller D.s' MTD 9–10.

"A plaintiff can prove a conspiracy with either direct or circumstantial evidence."[147] However, if a plaintiff tries to prove an antitrust conspiracy through circumstantial evidence "ambiguous conduct that is as consistent with permissible competition as with illegal conspiracy does not by itself support an inference of antitrust conspiracy" and the plaintiff must "offer evidence tending to exclude the possibility that the alleged conspirators either acted independently or colluded in a way that could not have harmed the plaintiff."[148] CVB has failed to meet this standard. The allegedly conspiratorial conduct it points to is as likely to have been independent action as to have been the product of an illegal conspiracy.[149] Therefore, CVB has failed to plausibly allege a conspiracy by Defendants to monopolize the mattress market.

### e.   Utah Antitrust Act Violation

CVB's Utah Antitrust Act claim relies exclusively on the allegation that Defendants' antidumping petitions harmed CVB, limited competition, and harmed consumers.[150] The court has already dismissed with prejudice the Utah Antitrust Claim based on petitioning activity, so the court does not further address this claim.[151]

---

[147] *Lantec, Inc. v. Novell, Inc*., 306 F.3d 1003, 1028 (10th Cir. 2002) (citing *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809–810 (1946)).

[148] *Id.*, quoting *Multistate Legal Stud., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc*., 63 F.3d 1540, 1556 (10th Cir. 1995).

[149] CVB relies on *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163 (10th Cir. 2010), to support its contention that the SAC's allegations, taken as a whole, sufficiently demonstrate a conspiracy. *See* CVB Opp. to Seller D.s' MTD 9. *Lemmon* was not applying the standard for antitrust pleadings, but for qui tam actions under the False Claim Act. Regardless, as established above, Plaintiff's complaint, taken as a whole, has not plausibly alleged an antitrust conspiracy.

[150] SAC ¶¶ 374–377.

[151] Order Granting Second MTD 57.

## II.     Lanham Act Claim

In its fifth claim for relief, CVB alleges that Defendants violated the Lanham Act's

prohibition on false or misleading advertising. CVB states that Defendants' press releases,

marketing materials, and "campaigning through ISPA" conveyed false and misleading

information to "millions of consumers."[152] It also claims that Defendants misrepresented their

products as being made in America.[153] To prevail on a false advertising claim, a plaintiff must

show:

(1) That defendant made material false or misleading representations of fact in connection
   with the commercial advertising or promotion of its product;
(2) In commerce;
(3) That are either likely to cause confusion or mistake as to (a) the origin, association or
   approval of the product with or by another, or (b) the characteristics of the goods or
   services; and
(4) Injure the plaintiff.[154]

"To demonstrate that a representation was false or misleading, a plaintiff must show that it was

either literally false, either on its face or by necessary implication or that it was literally true but

likely to mislead or confuse customers."[155]

CVB's Lanham Act claim employs the same collective and imprecise pleading as its

antitrust claims, generally stating that "Defendants issued a press release"[156] or "publicized their

fraudulent petitions."[157] These vague allegations do not establish that any Seller Defendant was

commercially advertising or promoting its product, only that some Defendants issued press

---

[152] SAC ¶ 369.
[153] Pl. Opp. to Seller D.s' MTD 15.
[154] *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 549 (10th Cir. 2015) (quoting *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999)).
[155] *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1235 (10th Cir. 2023) (*quoting Zoller Lab'ys, LLC. v. NBTY, Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004)) (internal quotations omitted).
[156] SAC ¶ 296.
[157] SAC ¶¶ 22, 217, 264, 330, 370.

statements about their petitioning activity. Furthermore, the pleading does not allege how consumers may have been misled by any statements in the petitions or related statements.

CVB more concretely pleads which statements ISPA made, pointing out statements where ISPA expressed support for the petitions[158] and released an article about the petitions with an included questionnaire.[159] Although these statements are better pled, they still fail to establish a Lanham Act violation. CVB's claims fail on the first element—the SAC does not plausibly plead that ISPA was engaged in commercial advertising or promotion of a product. As alleged, ISPA was making statements about events in the sleep products industry and commenting on member activities, which it supported.[160] ISPA could not have made false statements promoting its product, as it does not produce or sell mattresses.[161] Perhaps recognizing that ISPA did not advertise any products, CVB argues ISPA still violated the Lanham Act because it conspired with the other Defendants to engage in false advertising.[162] But CVB has not plausibly alleged that ISPA's statements were either literally false or likely to mislead or confuse customers. CVB has not alleged that ISPA's statements that it supported the antidumping petitions or was "thrilled" the petitions ultimately succeeded are untrue or deceptive.[163] Therefore, ISPA's statements have not been plausibly alleged to violate the Lanham Act.

---

[158] SAC ¶¶ 301, 308, 310.
[159] SAC ¶ 309.
[160] *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 505 (4th Cir. 2015) (upholding dismissal of Lanham Act claim by leather producer against trade group because statement in industry new article were opinions, not misrepresentations of fact); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 555 (D. Md. 2013) (dismissing false advertising claims because "none of the allegedly false or misleading statements were made in commercial advertising or promotion") (internal quotations omitted).
[161] CVB encourages the court to discard the Lanham Act's requirement that a defendant must be a direct competitor. *See* CVB Opp. to ISPA MTD 18. Because CVB's Lanham Act claim fails on other elements, the court declines to further address this argument.
[162] CVB Opp. to ISPA MTD 19.
[163] SAC ¶¶ 304, 305.

CVB next claims that Defendants have collectively misrepresented their products as being "Made in America" in violation of the Lanham Act.[164] CVB again has failed to plainly state which Seller Defendants represented their products as being "Made in America," what products are involved, or how much of the offending products were produced outside the United States. Without at least some of this information, CVB has not plausibly alleged that any "Made in America" advertising was literally false or likely to mislead customers.[165]

Finally, CVB has failed to allege how any misrepresentation injured it. CVB's Second Amended Complaint "does not indicate how much [CVB's] profits have decreased since Defendants began their advertising campaign; it does not quantify or estimate the decrease in goodwill; it does not quantify the number of potential customers who allegedly have been lost because of Defendants' statements or how that number would be measured."[166] At best, CVB states that it "has been injured in its business or property" by the alleged Lanham Act violations.[167] This conclusory statement does not plausibly allege that CVB was actually injured as required by the Act.

CVB has failed to plausibly allege multiple essential elements of its Lanham Act claim. Accordingly, the claim is dismissed.

---

[164] SAC ¶¶ 326, 327.

[165] *I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1010–1011 (10th Cir. 2024) (statement that products were made in America could not be literally false because "Even if some components had come from China or Canada, [manufacturer] assembled some of its products in the United States. [Manufacturer]'s advertisements are thus ambiguous when they say that the products are made in the United States or in America. With this ambiguity, the advertisements cannot be literally false.") (internal quotations omitted).

[166] *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 551 (10th Cir. 2015). CVB alleges that "due to the filing of the Fraudulent Antidumping Petitions, it needed to redevelop scores of Mattress product families and has been forced to abandon dozens of potential Mattress and other related product lines and related marketing and sales promotions that has cost it roughly $200 million in revenue in 2020." SAC ¶ 338. This allegation does not describe how much of these alleged damages were caused by Defendants' alleged Lanham Act violation. Therefore, CVB has not sufficiently alleged their injuries to support a Lanham Act claim.

[167] SAC ¶ 377.

### III.     Defamation

CVB alleges it was defamed when Defendants "amplified the false information and statements it made to Commerce and the ITC" and "made public statements to consumers and press outlets" regarding the petitions and CVB, damaging its reputation.[168] "In order to succeed on their defamation claim, Plaintiffs must prove five separate elements: (1) that Defendants published the statements in question; (2) that the statements were false; (3) that the statements were not subject to any privilege; (4) that the statements were published with the requisite degree of fault; (5) that the statement resulted in damages."[169] "Before defamatory statements may be regarded as actionable, a party must show that the statements 'refer to some ascertained or ascertainable person.'"[170]

Beyond the previously addressed collective pleading problems, CVB has failed to plead that any allegedly defamatory statement identified it. CVB alleges that Defendants' representatives referred to importers, including CVB, as "Chinese respondents," which it claims was disparaging.[171] However, CVB was not a respondent in the First Petition's proceedings, so this statement could not plausibly refer to it.[172] CVB next argues the press release's reference to "Chinese producers" sufficiently identified CVB.[173] However, CVB is a not a foreign mattress

---

[168] SAC ¶¶ 385–386.
[169] *Davidson v. Baird*, 2019 UT App 8, ¶ 25, 438 P.3d 928, 936 (citing *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535, 543).
[170] *Pratt v. Nelson*, 2007 UT 41, ¶ 52, 164 P.3d 366, 382 (quoting *Lynch v. Standard Pub. Co.*, 51 Utah 322, 170 P. 770, 773 (1918)).
[171] SAC ¶ 298, CVB Opp, to Seller D.s' MTD 20.
[172] ITC First Petition Final Determination at 3–4.
[173] CVB Opp. to Seller D.s' MTD 20.

producer.[174] CVB does not point to any statement by any Defendant that could plausibly refer to any particular domestic mattress company, let alone any statement that names CVB.[175]

CVB also argues its defamation claim is adequately alleged because ISPA has been added as a defendant.[176] ISPA responds that CVB's defamation claim is time barred, as defamation has a one-year statute of limitations, and the last allegedly defamatory statement was published in June 2020.[177] CVB argues the defamation claim relates back to the original pleading and is not time barred.[178]

Under Federal Rule of Civil Procedure 15, an amendment to a pleading relates back to the date of the original pleading when the party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."[179] Relation back "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the

---

[174] SAC ¶ 12.

[175] SAC ¶¶ 296 ("Defendants issued a press release regarding the First Filed Petition. The press release expressly stated that the 'Mattress Petitioners' alleged dumping margins of over 1,777 percent."); SAC ¶ 301 (ISPA press release states that ISPA members "have a right under U.S. law and global trade rules to compete on a level playing field."); SAC ¶ 304 (ISPA press release supporting petition filed by members "requesting an antidumping investigation on unfairly traded finished mattresses from the People's Republic of China.'); SAC ¶ 305 (Defendants issued a press release stating they were "thrilled that Commerce has confirmed that Chinese producers are relying on significant dumping margins to unfairly compete in the US market"); SAC ¶ 307 ("Defendants issued a press release" stating that the petitions had established "the negative impact surging volumes of low-priced dumped and subsidized imports from these countries have caused to US mattress manufacturing"); SAC ¶ 310 ("Defendants issued another press release" stating that American workers had lost jobs due to unfair trade practices"); SAC ¶ 311 ("Defendants caused ISPA to issue another press release citing domestic producers claims that the growth in the market was the result of Defendants' antidumping conduct"); SAC ¶ 313 (ISPA press release states that "the imports 'of Chinese mattresses . . . have caused material injury or threaten material injury to the entire U.S. mattress industry'").

[176] CVB Opp. to Seller D.s' MTD 18.

[177] *Bates v. Utah Ass'n of Realtors*, 2013 UT App 34, ¶ 3, 297 P.3d 49, 50 ("defamation claims in Utah are subject to a one-year statute of limitations").

[178] CVB Opp. to ISPA MTD 21.

[179] Fed. R. Civ. P. 15 (c)(1)(C)(ii).

pleading."[180] "The focus is on 'what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant.'"[181]

Both the original complaint and amended complaint refer to ISPA dozens of times.[182] ISPA could not have reasonably anticipated that CVB's intent was to brings claims against it when CVB had twice filed complaints mentioning ISPA's actions without naming it as a defendant.[183] CVB does not allege that there was a mistake concerning ISPA's identity and offers no support for the necessary contention that ISPA should have understood that it should have been a named defendant in either of the two previous complaints. Accordingly, CVB's defamation claim against ISPA is time barred. Even if it were not, the defamation claim would fail against ISPA for the same reason it fails against the Seller Defendants. Accordingly, CVB's defamation claim is dismissed.

## IV.   Intentional Interference with Prospective Business Relations[184]

CVB alleges that Defendants directly interfered with its business by engaging in a conspiracy to unlawfully interfere with CVB's potential customers.[185] It argues the alleged violations of antitrust law, the Lanham Act, and defamation constitute improper means.[186] Seller

---

[180] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).
[181] *Barker v. Utah Dep't of Env't Quality*, No. 21-4024, 2022 WL 259955, at *2 (10th Cir. 2022) (quoting *Krupski*, 560 U.S. at 554).
[182] Complaint ¶¶ 145, 146, 147, 148, 273, 278, 332, 333, FAC ¶¶ 296, 297, 298, 299, 300, 304, 305, 307, 309, 348, 373, 374.
[183] *Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) (holding amended complaints did not relate back to the date of original complaints because there was no mistake concerning the identity of the proper party).
[184] The Second Amended Complaint continues to refer to this cause of action as "Intentional Interference with Prospective Economic Advantage." SAC 78. In briefing, CVB refers to this as "Intentional Interference with Prospective Business Relations," the term used in Utah case law. *See* CVB Opp. to Seller D.s' MTD 19. Accordingly, the court uses this term.
[185] *Id.*
[186] CVB Opp. to ISPA MTD 20.

Defendants argue that CVB has not properly alleged any improper means because the facts do not show they defamed CVB or violated antitrust laws or the Lanham Act. ISPA argues that its statements were not improper means meant to interfere with CVB's business and that the claim, so far as it is based on defamation, is time barred.[187]

To properly state this claim, CVB must plausibly allege that: (1) Defendants intentionally interfered with its existing or potential economic relations, (2) for an improper purpose or by improper means, (3) injuring CVB.[188] "To establish improper means, a plaintiff must show that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession."[189]

As noted above, CVB has not alleged sufficient facts to make it plausible that Defendants violated state or federal antitrust statutes or the Lanham Act. CVB has also failed to plausibly allege that Defendants defamed it. CVB's claim that Defendants "bribed" retailers also fails. It points to the same allegations used to support its antitrust claim that some Defendants paid for store remodels, entered exclusivity agreements, and acquired a mattress retailer.[190] CVB does not cite any authority finding such agreements may constitute bribery. These statements do not plausibly allege bribery or establish that any Defendants harmed CVB's business through means "contrary to statutory, regulatory, or common law or violated an established standard of a trade

---

[187] ISPA MTD 20–22.
[188] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553, 556.
[189] *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 71, 416 P.3d 401, 425 (quoting *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323, 331).
[190] CVB Opp. to Seller D.s' MTD 22; SAC ¶¶ 318–325, 380.

29

or profession."[191] Accordingly, CVB has failed to allege sufficient facts to show Defendants intentionally interfered in its business relations.

In conclusion, viewing the factual allegations of the Second Amended Complaint in the light most favorable to CVB, it has failed to state a plausible claim. CVB's Second Amended Complaint is dismissed with prejudice. Dismissal with prejudice "is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."[192] The court has twice granted CVB leave to amend its complaint over a lengthy period of time,[193] which has resulted in only modest changes to the allegations in the original Complaint.[194] CVB has emphasized that "Defendants' conspiracy is the very crux of the case,"[195] but it has repeatedly failed to plead sufficient facts to make any such conspiracy plausible. Nor has it corrected the numerous other deficiencies addressed in the court's earlier dismissal order, despite ample time and opportunity to do so.[196] It is now clear that CVB cannot state a plausible claim. Because further amendment would be futile, the court dismisses the complaint with prejudice.

---

[191] *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 71, 416 P.3d 401, 425 (quoting *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323, 331).
[192] *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) (quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014)) (italics removed).
[193] Order Granting Motion to Dismiss, ECF No. 63, filed Sep. 17, 2021; Order Granting Motion for Extension of Time, ECF No. 68, filed Dec. 15, 2021; Memorandum Decision and Order Granting Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 99, filed April 3, 2024; Order Granting Second MTD.
[194] Complaint, ECF No. 2, filed Oct. 28, 2020; *see also* Redline, ECF No. 94-3, filed Nov. 3, 2023.
[195] CVB Opp. To Seller's D. MTD 4.
[196] Dismissal Order, ECF No. 79, incorporated herein by reference.

30

**ORDER**

Accordingly, Defendants' motions to dismiss for failure to state a claim are

GRANTED.[197] Plaintiff's Second Amended Complaint is dismissed with prejudice.


Signed October 15, 2024.

BY THE COURT

David Barlow
United States District Judge

---

[197] ECF 103; ECF 110.